UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
PATRICK DELIA,

             Plaintiff,                        **MEMORANDUM & ORDER**

                                                  03-CV-3367 (DRH) (AKT)

   - against -

PATRICK R. DONAHOE, POSTMASTER
GENERAL US POSTAL SERVICE,

             Defendant.
--------------------------------------------------X

**HURLEY, Senior District Judge:**

        On July 10, 2003, Plaintiff Patrick Delia ("Plaintiff") initiated the instant employment discrimination action against his former employer, the United States Postal Service (the "Postal Service"). By Memorandum and Order dated May 23, 2012 ("Summary Judgment Decision"), the Court granted in part and denied in part the Postal Service's motion for summary judgment. Presently pending before the Court is Plaintiff's application seeking clarification as to the scope of damages available to Plaintiff. Since the resolution of any outstanding factual issue is reserved for the trial of this matter, the Court renders this decision to guide the parties, to the extent possible, as to the remedies the Court believes are available to Plaintiff. Nonetheless, it is important that the parties are aware that the remedies Plaintiff may seek at trial depend, in large part, upon the facts ultimately presented and established at trial.

**Background**

The background of this action is set forth fully in the Summary Judgment Decision. *See Delia v. Donahoe*, 862 F. Supp. 2d 196, 199-209 (E.D.N.Y. 2012). A brief summary of the facts relevant to this application follows.

In 1999, while working at a postal facility in Western Nassau, Plaintiff received two Letters of Warning, and was placed on an emergency suspension without pay. It was alleged that Plaintiff spoke threateningly to a supervisor during a phone call after having been incorrectly penalized by the supervisor for being unavailable during a night shift. According to Plaintiff, the supervisor then solicited incriminating stories about Plaintiff from other employees and requested an investigation by a postal inspector. The investigation revealed that Plaintiff had not listed certain violation convictions on his application. The Postal Service issued Plaintiff a Notice of Removal.

Plaintiff filed a grievance with the Postal Service regarding the Notice of Removal. As a result of the grievance, an arbitrator determined in July 2000 that the charges against Plaintiff of workplace violence had not been proven, but the charge that Plaintiff had failed to list violation convictions on his job application had been proven. The Postal Service reinstated Plaintiff to full-time employment in August 2000 at a different location in Nassau County (the "Hempstead Facility") at the same level of grade and pay. The arbitration decision provided that Plaintiff would be terminated in the future if he committed an act warranting termination, and did not award Plaintiff back pay as it instead treated Plaintiff's removal as an unpaid suspension period for falsifying his employment application.

Plaintiff worked at the Hempstead Facility for almost two years, until June 12, 2002, at which time he was issued a Notice of Removal for Improper Conduct and Failure to Follow Instructions ("2002 Notice of Removal"). The 2002 Notice of Removal, which provided that Plaintiff's employment would be terminated as of July 15, 2002, was prompted by misconduct Plaintiff committed while attending job training, including violating the training facility's no smoking policy and disabling a smoke detector and fire enunciator. An arbitrator determined

2

that Plaintiff's misconduct warranted termination. However, prior to the official termination of Plaintiff in April 2004, Plaintiff filed the instant action alleging that the Postal Service violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by discriminating against him based upon his national origin, and by retaliating against him because he had filed administrative complaints of discrimination.

As a result of the Postal Service's motion for summary judgment, the following of Plaintiff's claims survive: 1) his discrimination claims based upon the first Letter of Warning issued in 1999, his emergency placement on unpaid off-duty status, and the August 10, 1999 Notice of Removal; and 2) his retaliation claims based upon the second Letter of Warning issued in 1999, his emergency placement on unpaid off-duty status, and the August 10, 1999 Notice of Removal. *See Delia*, 862 F. Supp. 2d at 226.

## Discussion

### I. *Plaintiff's Contentions*

Plaintiff argues that if he successfully proves his discrimination and retaliation claims at trial, he "is entitled to economic damages from the time of his first removal to the present, including back pay, lost future pay and benefits, and lost pension, as well as compensatory damages for past and future mental pain and suffering and mental anguish." (Pl.'s Letter Mem. at 3.)

Plaintiff argues that the purpose of Title VII remedies is to the make the victim of discrimination whole and restore him to the economic position he would have occupied had he not been discriminated against. (*Id.*) According to Plaintiff, he is entitled to recover for those damages he would not have sustained "but for" the Postal Service's discriminatory conduct. (*Id.*) Plaintiff argues that, but for the Postal Service's discrimination, he never would have been

3

fired. (*Id.* at 4.) Specifically, Plaintiff argues that he never would have violated the smoking policy during his training for the Postal Service in Oklahoma, if he had not been discriminated and retaliated against by the Postal Service in 1999, and subsequently reinstated and assigned to perform work outside of his normal job duties at the Hempstead facility that ultimately sent him for the training.[1] (*Id.*; Letter Reply at 2.) In addition, Plaintiff argues that had it not been for the alleged discriminatory acts that caused his suspension, the investigation, and the issuance of a Notice of Removal in 1999, there would not have been any grounds on which to base a "last chance" provision in the 2000 arbitration award ("Last Chance Agreement"). (Pl.'s Letter Mem. at 5.) Plaintiff contends that "[w]hether there is a causal link is a question for the jury." (Letter Reply at 1.)

## II. *The Postal Service's Contentions*

The Postal Service agrees that Plaintiff may seek damages for the time period of June 15, 1999 through August 11, 2000, when Plaintiff had been placed on an unpaid, off-duty status, as well as compensatory damages relating to the two letters of warning issued in 1999.[2] (Def.'s Letter Mem. at 3-4.) However, the Postal Service contends that Plaintiff is not entitled to any additional equitable relief beyond back pay for any period of time subsequent to Plaintiff's reinstatement on August 12, 2000. (*Id.* at 4.)

It is the Postal Service's position that Plaintiff is not entitled to additional equitable relief other than back pay for the unpaid period between June 15, 1999 and August 11, 2000 because Plaintiff was made "whole" when he was reinstated by the Postal Service. (*Id.*) The Postal

---

[1] Plaintiff claims that he was employed as a "Mail Processing Mechanic" for the Postal Service, but when he was reinstated and assigned to the Hempstead facility, "there was no equipment on which a Mail Processing Mechanic . . . could work," so Plaintiff was "reduced to performing work outside his job title and job description such as policing the bathrooms and other custodial duties." (Pl.'s Letter Mem. at 2.)

[2] The Postal Service states, and Plaintiff does not dispute, that Plaintiff was paid through June 14, 1999, and that Plaintiff's unpaid period began on June 15, 1999. (Def.'s Letter Mem. at 2 n. 2.)

4

Service argues that Plaintiff's reinstatement "cut off any damages flowing from the 1999 disciplines because, with the exception of the discrete back pay issue . . . , [P]laintiff's reinstatement restored him to the same economic position that he would have been in but for the 1999 disciplines." (*Id.*)  The Postal Service further argues that "[P]laintiff had the opportunity to continue working full-time until retirement after reinstatement and to enjoy all the benefits associated with [Postal Service] full-time employment." (*Id.*)

In addition, the Postal Service contends that Plaintiff's termination in 2002 was the result of his own conduct, i.e., disabling a smoke detector and violating the Postal Service training facility's no smoking policy, which occurred three years after, and had nothing to do with, the alleged discriminatory and retaliatory conduct that occurred in 1999. (*Id.* at 5.)  According to the Postal Service, "Plaintiff's ability to commit such infractions was not exclusive to Oklahoma and was not caused by his presence there, much less by the 1999 discipline." (Def.'s Letter Mem. at 8).  Furthermore, the Postal Service refutes Plaintiff's claim that he would not have attended the training in Oklahoma in 2002, where he committed the acts that ultimately led to his termination, but for his reinstatement at the Hempstead facility. (*Id.*)  On the contrary, the Postal Service argues that Plaintiff repeatedly attended training in Oklahoma, and asserts that Plaintiff himself admitted that he had been asked to attend training in Oklahoma while he worked at the Western Nassau Facility in 1998. (*Id.*)  Finally, the Postal Service argues that Plaintiff's misconduct at the training facility provided a legitimate, independent basis for terminating Plaintiff regardless of the Last Chance Agreement. (*Id.* at 6.)

### III. *Analysis*

Since there is no dispute that Plaintiff is entitled to seek back pay for the time period from June 15, 1999 through August 11, 2000, when Plaintiff had been placed on an unpaid, off-

duty status ("Unpaid Suspension Period"), the only remaining issues are whether Plaintiff is entitled to seek: 1) compensatory damages and additional equitable relief for the Unpaid Suspension Period; 2) compensatory damages and equitable relief for the time period from August 12, 2000, when Plaintiff had been reinstated, through July 15, 2002, the date when Plaintiff was terminated pursuant to the 2002 Notice of Removal ("Reinstatement Period"); and 3) compensatory damages and equitable relief for the time period subsequent to Plaintiff's termination on July 15, 2002 ("Termination Period"). The Court will address each time period in turn.

### A. *Compensatory Damages and Additional Equitable Relief for the Unpaid Suspension Period from June 15, 1999 through August 11, 2000*

"The remedial provisions of Title VII authorize front and back pay." *Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012) (citing 42 U.S.C. § 2000e-5(g)(1)). "[A] lost wages award – whether in the form of back pay or front pay—is an equitable remedy" to be determined by the court. *Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005). The Second Circuit has stated that "[t]he purpose of back pay is to '*completely redress* the economic injury the plaintiff has suffered as a result of discrimination.'" *E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec. Indus.*, 164 F.3d 89, 101 (2d Cir. 1998) (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993)). Thus, "[a]n award of back pay . . . should ordinarily consist of lost salary, including anticipated raises, and fringe benefits." *Id.*

The Postal Service agrees that Plaintiff is entitled to "damages for his unpaid period from June 15, 1999 through August 11, 2000," but argues that "[P]laintiff is not entitled to any additional equitable relief beyond back pay" for the Unpaid Suspension Period. (Def.'s Letter Mem. at 4.) While it is unclear the exact "damages" the Postal Service agrees Plaintiff is entitled

6

to seek, and what "additional equitable relief" the Postal Service believes Plaintiff is not entitled to seek, Plaintiff is entitled to seek back pay for the Unpaid Suspension Period, which includes, as a matter of law, lost earnings and fringe benefits. *See Noel*, 697 F.3d at 213 ("Back pay is 'an amount *equal to the wages* the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits.'") (quoting *United States v. Burke*, 504 U.S. 229, 239 (1992), *superseded by statute on other grounds*).

Additionally, although the Postal Service agrees that Plaintiff may seek compensatory damages relating to the two letters of warning issued in 1999, Plaintiff is entitled to seek compensatory damages for the entire Unpaid Suspension Period for the emotional distress he suffered, provided that Plaintiff establishes at trial that the compensatory damages were caused by the alleged unlawful conduct.[3] *See* 42 U.S.C. § 1981a(a)(1); *Lore v. City of Syracuse*, 670 F.3d 127, 179 (2d Cir. 2012) (upholding jury's award of compensatory damages for emotional distress suffered by plaintiff as a direct result of defendants' retaliatory conduct); *United States v. City of New York*, 276 F.R.D. 22, 37 (E.D.N.Y. 2011) (stating that "victims of intentional employment discrimination may recover compensatory damages under § 1981a(a)(1) if they prove that the discrimination caused them emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, or other nonpecuniary losses") (citation and internal quotation marks omitted).[4]

---

[3] It is undisputed that Plaintiff may not recover more $300,000 in compensatory damages. 42 U.S.C. § 1981a(b)(3)(D).

[4] The Court notes that while damages awarded under section 706(g) of the Civil Rights Act of 1964, i.e., awards of front pay and back pay, are a form of equitable relief to be determined by the Court, damages awarded under 42 U.S.C. § 1981a, i.e., compensatory damages, are legal damages that are submitted to the jury. *See* 42 U.S.C. § 2000e-5(g); *Broadnax*, 415 F.3d at 271; *McCue v. State of Kan., Dep't of Human Res.*, 165 F.3d 784, 792 (10th Cir. 1999).

### B. *Compensatory Damages and Equitable Relief for the Reinstatement Period of August 12, 2000 to July 15, 2002*

The Postal Service argues that Plaintiff is not entitled to equitable relief for the Reinstatement Period because Plaintiff's reinstatement made him "whole," and restored him to the same economic position that he would have occupied but for the alleged discriminatory and retaliatory conduct. According to the Postal Service, any award of front pay for the Reinstatement Period would result in a "windfall" for the Plaintiff who had already been made whole by his reinstatement.[5] Additionally, the Postal Service argues that Plaintiff is not entitled to compensatory damages for the Reinstatement Period because "Plaintiff cannot demonstrate a direct relationship between the 1999 disciplinary actions and any alleged emotional distress he suffered post-reinstatement while working in a different setting under different supervisors." (Def.'s Letter Mem. at 5 n. 4.)

Plaintiff, on the other hand, argues that he was not reinstated to the same position he would have occupied had the alleged discriminatory conduct not occurred. Plaintiff asserts that he was originally employed as a "Mail Processing Mechanic" for the Postal Service, but when he was reinstated and assigned to the Hempstead facility after the occurrence of the alleged discriminatory acts, "there was no equipment on which a Mail Processing Mechanic . . . could work," so Plaintiff was "reduced to performing work outside his job title and job description such as policing the bathrooms and other custodial duties." (Pl.'s Letter Mem. at 2.)

---

[5] The Postal Service designates the economic damages Plaintiff seeks for the Reinstatement Period as front pay. "An award of front pay is an alternative to reinstatement where reinstatement is 'inappropriate.' " *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 287 (2d Cir. 2011) (citation omitted). Ordinarily, front pay is compensation awarded for the time after judgment, *see Noel*, 697 F.3d at 213, whereas, here, judgment has not been reached. Nonetheless, the Postal Service's designation of the economic damages for the Reinstatement Period as front pay is understandable because it is an award of economic damages for a period of time in which the Plaintiff had been reinstated after the alleged discriminatory conduct occurred.

8

"An award of front pay is an alternative to reinstatement where reinstatement is 'inappropriate.' " *Bergerson*, 652 F.3d at 287 (citation omitted). The Postal Service argues that Plaintiff was reinstated on August 12, 2000 to full-time employment at the Hempstead Facility, at the same level of grade and pay, and, therefore, an award of front pay in addition to Plaintiff's reinstatement would create a "windfall" recovery for Plaintiff. Plaintiff does not dispute that he was reinstated at the same level of grade and pay, but argues that he was reinstated to a different position with different duties than the position he previously had held as a Mail Processing Mechanic.

An award of front pay is intended to make a plaintiff economically whole. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) (stating that "front pay is simply money awarded for lost compensation . . . in lieu of reinstatement); *Noel*, 697 F.3d at 213 (stating that front pay is an award for lost compensation and is considered to be "wages"). Moreover, front pay is an alternative remedy to reinstatement. *Bergerson*, 652 F.3d at 287. Accordingly, once a plaintiff is provided with the remedy of reinstatement, the alternative remedy of front pay is presumably unavailable. However, in this case, the Court notes that Plaintiff argued upon his opposition to summary judgment that "at some point after his reinstatement, his overtime opportunities in Hempstead were eliminated." *Delia*, 862 F. Supp. 2d at 206. Thus, Plaintiff claims that his reinstatement caused him to suffer economic harm, i.e., lost overtime wages, and, therefore, the remedy of reinstatement did not make him economically whole. For this reason, Plaintiff may seek an award of economic damages for the Reinstatement Period to the extent that Plaintiff can prove that, but for the Postal Service's alleged unlawful conduct, he would not have suffered a loss in overtime wages. *See Holness v. Nat'l Mobile Television, Inc.*, 2012 WL 1744847, at *4 (E.D.N.Y. Feb. 14, 2012) (stating that a plaintiff must

"provide the court with competent evidence from which to calculate his lost overtime with any 'reasonable basis' "), report and recommendation adopted as modified, 2012 WL 1744744 (E.D.N.Y. May 15, 2012); *Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 411 (S.D.N.Y. 1996) (stating that the purpose of Title VII remedies is to restore victims "to the economic position they would have occupied but for the intervening unlawful conduct of employers") (citation and internal quotation marks omitted).[6]

Plaintiff also seeks compensatory damages for his past mental pain and suffering. As mentioned previously, compensatory damages are legal damages which should be submitted to the jury. Since a reasonable jury could find that Plaintiff suffered mental pain and suffering during the Reinstatement Period, including emotional anguish from being reinstated to a less prestigious position, as a direct result of the alleged unlawful conduct, Plaintiff may also seek compensatory damages for the Reinstatement Period.

### C. *Compensatory Damages and Equitable Relief for the Termination Period from July 15, 2002 to Present*

The Postal Service argues that Plaintiff is not entitled to front pay or compensatory damages for the Termination Period because Plaintiff was "properly terminated," and his termination was the direct result of his own misconduct, "which occurred three years after the 1999 discipline and which had nothing to do with it." (Def.'s Letter Mem. at 5 & n. 4.) The Court agrees.

Title VII damages are awarded to restore victims of discrimination "to the economic position they would have occupied but for the intervening unlawful conduct of employers." *Iannone*, 941 F. Supp. at 411 (citation and internal quotation marks omitted). Further, "[t]he

---

[6] Although Plaintiff argues in his reply that it was illegal for the Postal Service to place him in two maintenance positions upon his reinstatement, he provides no legal support for his argument which could provide the basis for an award of damages for the Reinstatement Period.

10

same 'but for' causation analysis which has been applied to [economic] damages applies to compensatory damages." *Clarke v. One Source, Inc.*, 2002 WL 31458238, at *6 (S.D.N.Y. Nov. 1, 2002).

In this case, no reasonable jury could find that but for the Postal Service's alleged discriminatory and retaliatory acts in 1999, Plaintiff would not have been terminated for disabling a smoke detector and violating the Postal Service training facility's no smoking policy. Although Plaintiff cites *Clarke v. One Source, Inc.*, 2002 WL 31458238 (S.D.N.Y. Nov. 1, 2002), to support his argument that but for the Postal Service's discrimination he never would have been terminated, (Pl.'s Letter Mem. at 3-4), the facts in *Clarke* are vastly distinguishable. In that case, the plaintiff, a porter for a company that provided cleaning and maintenance services in commercial buildings, filed numerous complaints with the New York State Division of Human Rights claiming, *inter alia*, that he had not been given a permanent porter position because he was black. *Clarke*, 2002 WL 31458238, at *1. Shortly after filing one of his complaints, the plaintiff was suspended from work for a failure to perform his duties. *Id.* Within days after being suspended, the plaintiff solicited a letter of recommendation from a tenant in the building where he worked, in violation of company rules. *Id.* Thereafter, the plaintiff was terminated for violating the company's rules. *Id.* The court in *Clarke* determined that "the jury was entitled to find that but for the improper suspension by [d]efendant of [p]laintiff in violation of Title VII, [p]laintiff would not have solicited a work recommendation from a tenant and would not have been lawfully terminated." *Id.*, at *5.

Here, as the Postal Service contends, Plaintiff's "termination occurred more than 3 years after the 1999 employment actions (as opposed to a mere 6 days as in *Clarke*), involved misconduct wholly unrelated to the 1999 disciplinary actions (as opposed to directly resulting

from the disciplinary action as in *Clarke*), and was proposed by supervisors who were not involved in the 1999 disciplinary actions." (Def.'s Letter Mem. at 7.) Thus, the causal nexus between Plaintiff's termination for disabling a smoke detector and violating the Postal Service training facility's no smoking policy, and the Postal Service's alleged discriminatory conduct, is far too attenuated to constitute a direct relationship. Accordingly, Plaintiff is not entitled to seek any damages or equitable relief for the Termination Period as a matter of law.

## Conclusion

For the reasons set forth herein, Plaintiff may seek back pay and compensatory damages for the Unpaid Suspension Period, and economic damages in the form of lost overtime wages, as well as compensatory damages for the Reinstatement Period. The Plaintiff is not entitled to equitable relief or compensatory damages for the Termination Period.

**SO ORDERED.**

Dated: Central Islip, New York
February 27, 2014

/s/_____
Denis R. Hurley
Senior District Judge